IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JANELLE BUFFORD § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. |
| § | |
| WALMART, INC., WALMART § | |
| STORES INC., and § | |
| DH PACE COMPANY, INC. § | |
| § | |
| Defendants. | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, JANELLE BUFFORD ("Plaintiff" or "Bufford") complaining of WALMART, INC., WAL-MART STORES, INC., and D.H. PACE COMPANY, INC. and hereby files this her PLAINTIFF'S ORIGINAL COMPLAINT and in furtherance thereof would respectfully show unto the Court as follows:

**I.
PARTIES**

1.     Plaintiff Janelle Bufford is an individual citizen of the State of Texas and resides in Denton County.

2.     Defendant Walmart, Inc. is a foreign for-profit corporation. Defendant is authorized to do business in the state of Texas and may be served with process pursuant to TEX. BUS. ORG. CODE §5.255 by serving its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

1

3. Defendant Wal-Mart Stores, Inc. is a foreign for-profit corporation. Defendant is authorized to do business in the state of Texas and may be served with process pursuant to TEX. BUS. ORG. CODE §5.255 by serving its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

4. Defendant D.H. Pace Company, Inc. is a foreign for-profit corporation. Defendant is authorized to do business in the state of Texas and may be served with process pursuant to TEX. BUS. ORG. CODE §5.255 by serving its registered agent: Corporation Service Company d/b/a CSC- Lawyers Incorporating Service Company, 2111 E. 7th St., Ste. 620, Austin, TX 78701-3136.

## II.
## JURISDICTION & VENUE

5. This Court has jurisdiction over the matter under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five thousand dollars ($75,000) and because Plaintiff is a citizen of Texas and Defendants Walmart, Wal-Mart Stores, and D.H. Pace are citizens of a different state.

6. Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391(a)(2) because it is the District in which all or a substantial part of the events or omissions giving rise to the claim occurred and/or where a substantial part of the property at issue is situated.

## III.
## BACKGROUND FACTS

7. The Wal-Mart Defendants collectively operate as a multi-national retail corporation that operates a chain of hypermarkets, retail stores, and grocery stores across the United States and elsewhere and is the largest company in the world. Defendant Wal-

2

Mart operates numerous hypermarkets and retail stores throughout the state of Texas, including Wal-Mart Supercenter Store #426, located 121 Highway and Main Street, The Colony, Denton County, Texas (Walmart Store #426).

A. **The Location.**

8. In 2019, Wal-Mart Store #426 advertised a "Grand Re-opening" after undergoing store remodeling. A decal dated 2019 is affixed to the subject door by Walmart Facility Maintenance:



9. Upon information and belief, Door 426-1 has continued to exhibit improper and early closures, and despite clear and immediate notice of the incident, the subject doors were not closed to public use or serviced until more than 5 months after the incident that caused significant injuries to the Plaintiff, indicating a clear disregard for the safety of business patrons of Wal-Mart Store #426.

B. **The Incident.**

10. On September 28, 2021, Plaintiff Janelle Bufford was a business patron at

3

Wal-Mart Store #426.

11. With the intent to enter Wal-Mart Store #426 for the purpose of purchasing goods or services available on the premises, Plaintiff carefully and slowly approached and entered the Stanley automatic sliding doors from the store parking lot (known as the "Exterior Grocery Entry Door" or "Door 426-1") of Wal-Mart Store #426.

12. As eighty-four-year-old Ms. Bufford entered the threshold area of Door 426-1, the automatic sliding doors closed on her suddenly and without warning, hitting Plaintiff and knocking her to the ground. The blow from the door and contemporaneous fall resulted in injuries to her legs, wrist, arm, shoulder, and face, including a broken nose. This incident was captured by Wal- Mart's video surveillance cameras.

13. Since her release from hospital care, Ms. Bufford has undergone additional physician visits, follow-up diagnostic testing, and physical therapy. Due to her level of pain, she was also treated with pain medication, and her physical mobility has been severely impacted. Furthermore, her ability to care for and transport herself (previously not an issue for Ms. Bufford) is greatly limited by her injuries due to continuing issues with her shoulder, wrist, and leg affecting not only her physical mobility but her overall interaction with others and quality of life.

C. **The Defendants' Knowledge.**

14. Upon information and belief, the manufacturer of the subject door, Stanley Access Technologies, LLC ("Stanley") manufactured and affixed warning decal and label notices to the automatic sliding doors at Wal-Mart Store #426. Although patrons such as Ms. Bufford are not sufficiently informed of the danger of the automatic sliding doors

4

considering the placement of the decals and absence of any other warnings, the Wal-Mart entities and Defendant D.H. Pace are aware of the danger.

15. The Wal-Mart entities and D.H. Pace are aware that "[c]ommercial doors are subject to many regulations that could incur fines or censures when doors are out of compliance. Additionally, improperly functioning doors can be dangerous for users which could increase your liability." www.stanleyaccess.com. According to the AAADM, "[i] f even the slightest problem is detected, the automatic door in question should be shut down and its operation should cease until a certified technician can diagnose and address the issue."

16. Along with the automatic sliding doors, it is believed Stanley provided Wal-Mart an "Owner's Operation and Maintenance Manual" (the "Owner's Manual") that required daily safety and maintenance inspections of the Stanley automatic sliding doors.

17. The Owner's Manual emphasized that Defendant Wal-Mart familiarize itself with the automatic door system, how the system operates, and that as owner or caretaker of the equipment, that Wal-Mart must "inspect the operation of [the] system on a daily basis to ensure that it is safe for all users of the door." The Owner's Manual also provided Wal-Mart with a description of the operation and maintenance requirements of the door system, along with specific instructions for the "Daily Safety Check" procedure. The Owner's Manual further provided that the door be "inspected at least annually by a Stanley certified technician."

18. Labeled as "for your customer's safety and your own protection," the "Daily Safety Check" procedure details a safety checklist for slide door systems with electronic

5

controls and overhead threshold safety systems, such as doors installed at Wal-Mart Store #426.

19. The Stanley automatic sliding doors are not designed to close on patrons attempting to cross the threshold. If the automatic sliding doors were functioning properly, Door 426-1 should not have closed on Plaintiff while in the threshold area.

20. The American Association of Automatic Door Manufacturers is a trade association of power-operated automatic door manufacturers. According to the AAADM, "[w]hen it comes to automatic doors, safety is a critical responsibility that should and must be shared by the business owner, specifying architect and supplier."

21. The AAADM confirms a structure owner "should perform daily safety checks on each automatic door. It is advisable to check your door each morning when the power is turned on to the door system or after any loss of electrical power."

22. AAADM provided guidance for daily safety inspection of automatic doors in a published trade white paper[1] as follows:

  a. Walk toward the center of the door opening at various angles and at a normal pace. The door should open when you are about 4 feet from the door.

  b. Stand motionless and crouch in and around the door path are for at least 10 seconds. The door should not close.

  c. Move clear of the area. The door should remain open for at least 1.5 seconds and should close slowly and smoothly.

  d. Repeat steps 1-3 from the other direction.

---

[1] HOW TO PROPERLY SELECT AND MAINTAIN AUTOMATIC DOORS IN RETAIL ENVIRONMENTS, Johnson, Christopher; AMERICAN ASSOCIATION OF AUTOMATIC DOOR MANUFACTURERS.

23. Defendants, individually and jointly, have refused to accept any responsibility for the above-referenced incident and for Plaintiff's injuries.

## IV.
## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE AS TO WAL-MART ENTITIES

24. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

25. Wal-Mart had a duty to exercise the degree of care that a reasonably retail entity would use to avoid harm to others under circumstances like those described herein.

26. The negligent, careless, and reckless disregard of duty of Wal-Mart, consisted of, but is not limited to, the following acts or omissions:

   a. Failing to properly inspect, service, and maintain Door 426-1;

   b. Failing to perform daily safety checks on Door 426-1;

   c. Failing to properly test Door 426-1's safety devices;

   d. Failing to adequately respond to prior reports and/or complaints concerning the failure of Door 426-1 to function properly;

   e. Failing to properly install safety sensors on Door 426-1 to prevent the door's closure while a person or object is within the door's threshold area;

   f. Failing to install proper visual warning signs or audible warning signals to indicate Door 426-1 would close while a person or object is within Door 426-1's threshold area;

   g. Failing to provide adequate safety policies and procedures to Wal-Mart employees regarding the proper inspection and maintenance of Door 426-1; and

   h. Failing to train or supervise Wal-Mart employees regarding the proper inspection and maintenance of Door 426-1.

27. Each of the foregoing acts and omissions by Wal-Mart, singularly or in combination with others, constituted affirmative and ongoing negligent activity which contemporaneously and proximately caused the incident and the personal injuries which Plaintiff.

## COUNT 2: PREMISES LIABILITY AS TO WAL-MART ENTITIES

28. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

29. At the time of the incident, Plaintiff was entering Wal-Mart's premises as a business patron invitee with Wal-Mart's knowledge and for the mutual benefit of both parties.

30. At the time of the incident, Wal-Mart owned, possessed, and/or had the right to possess or use the Wal-Mart Store #426 location.

31. The Wal-Mart entities possessed actual and/or constructive knowledge of the dangerous condition of the automatic sliding doors at this location, including issues with Door 426-1, and failed and refused to reasonably inspect, service and/or replace Door 426-1, which posed an unreasonable risk of harm. The inadequately warned closing of an automatic sliding door while persons or objects are within the door's threshold area is an unreasonable risk of harm where there is a sufficient probability of a harmful event occurring, such as the door striking Plaintiff in this case.

32. The Wal-Mart entities individually and jointly breached the duty of ordinary care by (a) failing to properly inspect or maintain Door 426-1, (b) failing to sufficiently repair Door 426-1, (c) failing to adequately warn Plaintiff that Door 426-1 would close on

8

her while she was in Door 426-1's threshold area or by (d) failing to make Door 426-1 reasonably safe despite its knowledge of the importance of inspection and maintenance on Door 426-1 and likelihood of risk of serious injury.

33. Each of such acts and omissions by the Wal-Mart entities proximately caused the personal injuries which Plaintiff suffered.

COUNT 3: NEGLIGENCE AND NEGLIGENT UNDERTAKING AS TO D.H. PACE

34. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

35. Prior to the incident, Defendant D.H. Pace was hired by Defendant Wal-Mart to perform certain inspection, service and/or maintenance services on the Stanley automatic doors at one or more Wal-Mart retail stores, including without limitation Wal-Mart Store #426 and the subject door:



9

36. In connection with the services which Defendant D.H. Pace agreed to provide Wal-Mart, D.H. Pace executed, on information and belief, one or more written contracts or agreements which describe the services D.H. Pace was contractually obligated to provide, which would have included the inspection, service and/or maintenance of the Stanley automatic doors at Wal-Mart Store #426, where hundreds if not thousands of customers and employees were known to have utilized on a daily basis. Thus, Defendant D.H. Pace undertook certain services in exchange for payment which D.H. Pace knew or should have known were necessary for the protection of others.

37. Defendant D.H. Pace had a duty to exercise the degree of care that a reasonably careful entity would use to avoid harm to others under circumstances similar to those described herein.

38. Because "properly operating automatic doors allow for the safe and uninterrupted flow of traffic," the failure of the subject sliding door to remain open indicates a negligent, careless, and reckless disregard of duty of this service provider.

39. The negligent, careless, and reckless disregard of duty of Defendant D.H. Pace, consisted of, but is not limited to, the following acts or omissions:

   a. Failing to properly inspect, service, and maintain Door 426-1;

   b. Failing to properly test Door 426-1's safety devices;

   c. Failing to affix a proper daily safety checklist or safety information label on Door 426-1 in a clear and visible location;

   d. Failing to timely replace one or more manufacturer discontinued or malfunctioning safety sensors on Door 426-1;

    e. Failing to properly service and maintain safety sensors on Door 426-1 to prevent the door's closure while a person or object is within the door's threshold area;

    f. Failing to install proper visual warning signs or audible warning signals to indicate Door 426-1 would close while a person or object is within the door's threshold area;

    g. Failing to provide adequate safety policies and procedures to D.H. Pace employees regarding the proper inspection and maintenance of Door 426-1;

    h. Failing to train or supervise D.H. Pace employees regarding the proper inspection and maintenance of Door 426-1; and

    i. Failing to select an independent contractor or subcontractor to perform services D.H. Pace was contractually obligated to perform, but which was unable, unwilling, or unqualified to perform.

40. Each of the foregoing acts and omissions by Defendant D.H. Pace, singularly or in combination with others, constituted affirmative and ongoing negligent activity which contemporaneously and proximately caused the incident and the personal injuries which Plaintiff suffered.

## COUNT 4: GROSS NEGLIGENCE

41. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

42. The acts or omissions of Defendants Wal-Mart and D.H. Pace, as described above, when viewed objectively from each individual Defendants' standpoint at the time they occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Upon information and belief, these Defendants were grossly negligent in ignoring clear safety requirements despite possessing actual,

11

subjective awareness of the risk both generally and as applied to Door 426-1, including ignoring prior complaints as to the threshold sensor timing.

43. Knowing the public relies upon business and service providers in control over dangerous conditions, these Defendants remained consciously indifferent and acted recklessly in in failing to conduct safety checks and properly service Door 426-1.

44. As described above, the Wal-Mart Defendants and D.H. Pace had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, or welfare of others. Each of the foregoing acts and omissions by the Wal-Mart Defendants and D.H. Pace, singularly or in combination with others, constituted gross negligence pursuant to TEX. CIV. PRAC. & REM. CODE §41.001 *et. seq*.

## V.
## DAMAGES

45. Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

46. As a direct and proximate result of the incident made the basis of this lawsuit, Ms. Bufford was caused to suffer personal injuries, and to incur the following damages:

    a. Reasonable medical care and expenses in the past, which were reasonable, necessary, and constituted usual and customary charges for such services in the Texas counties in which they were incurred.

    b. Reasonable and necessary medical care and expenses which will, in all probability, be incurred in the future. It is anticipated such treatment will include physician oversight, diagnostic testing, and physical therapy.

    c. Physical pain and suffering in the past, and which will, in all probability, be incurred in the future.

    d.  Mental anguish in the past and which will, in all probability, be incurred in the future.

    e.  Physical impairment in the past, and which will, in all probability, be incurred in the future.

    f.  Disfigurement in the past, and which will, in all probability, be incurred in the future.

## V.
## EXEMPLARY DAMAGES

47.    Plaintiff hereby incorporates all preceding paragraphs and further alleges as follows.

48.    The negligence of Defendants described above occurred because of the type of conscious indifference and reckless disregard toward the safety of others as to allow for the award of exemplary or punitive damages under Texas law. Such conduct, as described for fully herein constitutes gross negligence. As a result, Plaintiff hereby makes a claim for exemplary or punitive damages in accordance with Texas Civil Practice & Remedies Code §41.003 against each and every Defendant individually.

49.    Plaintiff seeks exemplary damages in an amount that may be found by the trier of fact.

## VI.
## JURY TRIAL

50.    Plaintiff demands a jury trial and has tendered the appropriate fee with the filing of her Original Complaint.

# VII.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants for damages in an amount within the jurisdictional limits of this Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, exemplary damages; costs of court; and, such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

CARPENTER & SCHUMACHER, P.C.

*/s/Rebecca Bell-Stanton*
N. SCOTT CARPENTER
State Bar No. 00790428
scarpenter@cstriallaw.com
REBECCA E. BELL-STANTON
State Bar No. 24026795
rstanton@cstriallaw.com
2500 N. Dallas Parkway, Suite 495
Plano, Texas 75093
Telephone: 972-403-1133
Facsimile: 972-403-0311